IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROBERTO GARCIA,<br>   *Plaintiff* | §<br>§<br>§ | |
| -vs- | §<br>§ | SA-16-CV-01175-XR |
| SAN ANTONIO, TEXAS, SAN ANTONIO POLICE DEPARTMENT, CITY OF SAN ANTONIO, JULIO ORTA, SAN ANTONIO POLICE OFFICER, #1079, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, CHIEF WILLIAM MCMANUS, ZACHARY SHERRON,<br>   *Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

## ORDER

On this date the Court considered United States Magistrate Judge Henry J. Bemporad's Report and Recommendation in the above-numbered and styled case, filed May 25, 2021 (ECF No. 134) and Plaintiff Roberto Garcia's objections thereto (ECF No. 138).

### BACKGROUND[1]

On July 17, 2014, Plaintiff Roberto Garcia was arrested for driving while intoxicated ("DWI") while sleeping in a parked vehicle in a driveway to a construction site. ECF No. 86 at 2. He remained in pretrial detention for sixteen months before the charges were dismissed. After his release, Garcia filed a lawsuit pro se in federal district court under 42 U.S.C. § 1983, asserting federal constitutional and related state law claims against the City of San Antonio, San Antonio Police Department ("SAPD") Chief of Police William McManus, and Julio Orta—one of the five officers involved in his arrest. ECF No. 3. Plaintiff later filed an amended complaint, adding another SAPD officer, Zachary Sherron (together with Orta and McManus, the "Individual Defendants"), as a defendant. ECF No. 86.

---

[1] These facts are undisputed unless otherwise noted.

Plaintiff asserts that, on the evening of July 17, 2014, he was riding in the passenger seat of the vehicle when it began to overheat. ECF No. 129-7 at 7–9. The driver pulled over, parked the car in the driveway to the construction site, and left to go seek assistance; Plaintiff remained with the car and shifted to the driver's seat, where he fell asleep. *Id.*

At approximately 11:14 p.m., Defendant Sherron, a new SAPD officer who had not completed his DWI training, was dispatched to Plaintiff's location by other officers. ECF No. 121-3, Sherron Dep. Tr. at 30:1–31:13. Sherron was the last of four patrolman to respond to a call for a man sleeping behind the wheel of a car. When Sherron arrived at the scene, the car was running, and Plaintiff was asleep at the steering wheel. Sherron reported that he observed the car lunge forward a few feet, as though the driver was attempting to flee, though it then came to an abrupt stop. *Id.* Plaintiff disputes this characterization, asserting that the vehicle was not running and that any movement the car might have made was not the result of Plaintiff attempting to operate it, but instead the result of some other cause, including Sherron "banging on the window." *See* ECF No. 86 at 2–3; ECF No. 129 at 12.

Plaintiff was ordered to exit the vehicle, which he did. ECF No. 86 at 3. Defendant Orta, a fifth SAPD officer, arrived at the scene and attempted to determine whether Plaintiff had been drinking. ECF No. 121-4 at 6. Orta observed that Plaintiff smelled of alcohol, had slurred and confused speech, red, glassy eyes, and was hesitant while walking. ECF No. 121-4 at 5. Ultimately, Orta decided to arrest Plaintiff. *Id.*

In support of Plaintiff's arrest, a search warrant for his blood, and his pretrial detention, the Officers provided their incident reports and an affidavit to the magistrate. *See* ECF No. 129-1. In the reports, the Officers asserted that Plaintiff "attempted to pull the vehicle forward" and that "the vehicle lunged forward then abruptly came to a stop a few feet later." *Id.* at 3, 8–9, 13.

Moreover, the Officers' reports asserted that the vehicle was found at "2000 Zamora St[.]," in a "public place." *Id.* Plaintiff argues that these were deliberately false statements, and that they were motivated by a previous lawsuit he had filed against another SAPD officer. ECF No. 129-7 at 9.

Plaintiff was brought before a magistrate, who set his bond at $75,000, which he could not afford. ECF No. 86 at 4. Plaintiff was held in pretrial detention and was finally released, after over 500 days in jail, on December 4, 2015, when the Bexar County District Attorney's Office dismissed the case. *See* ECF No. 129-3.

## PROCEDURAL HISTORY

On November 21, 2016, Plaintiff filed his original complaint *pro se* against Defendants Orta, San Antonio, and Police Chief William McManus, alleging that both his arrest and pretrial detention were unlawful. ECF No.1-1.

On March 2, 2018, this Court adopted the Magistrate Judge's recommendation to dismiss Plaintiff's claims as barred by the statute of limitations and to decline supplemental jurisdiction over his pendent state law claims. *See* ECF Nos. 53, 58. On appeal, the Fifth Circuit affirmed the dismissal of Garcia's false arrest claim, but concluded that Plaintiff's claim "for pretrial detention pursuant to wrongful legal process under the Fourth Amendment" was timely filed within two years of his release in 2016. ECF No. 62 at 6.

On remand, the Court appointed counsel for Plaintiff, and entered a new scheduling order. ECF Nos. 64, 73. With leave of court, Plaintiff filed an Amended Complaint which provided more detail to the illegal detention allegations and added Defendant Zachary Sherron. ECF Nos. 85, 86.

On February 5, 2021, the City moved for summary judgment and the Individual Defendants sought dismissal under Rule 12(c), or, in the alternative, summary judgment. *See* ECF Nos. 120, 121. Given the large amount of evidence outside the pleadings that submitted, the Magistrate Judge considered both motions under Rule 56. ECF No. 131 at 3–4 (citing FED. R. CIV. P. 12(d)).

In the Report and Recommendation, the Magistrate Judge concluded that Sherron and Orta were entitled to qualified immunity because, even without the allegedly false statements included in their reports, there was no genuine issue of material fact as to whether the Officers had probable cause to believe that Plaintiff was driving while intoxicated. *See* ECF No. 134. Thus, the Magistrate Judge concluded that Plaintiff's constitutional rights had not been violated. Because the claims against the City and Chief McManus were necessarily premised on an underlying constitutional violation committed by the Officers, the Magistrate Judge did not reach Plaintiff's claim for *Monell* liability against the City or his supervisory claims against Chief McManus. *Id.*

## DISCUSSION

### I. Applicable Legal Standards

#### A. Standard of Review

Where the report and recommendation has been objected to, the Court reviews the Magistrate Judge's recommended disposition *de novo* pursuant to Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1).

#### B. Summary Judgment Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R.

CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In

making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). "To obtain summary judgment, 'if the movant bears the burden of proof on an issue . . . because . . . as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the . . . defense to warrant judgment in his favor.'" *Access Mediquip, L.L.C. v. United Healthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011).

Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and designate specific facts in the record showing that there is a genuine issue for trial. *Id.* at 164. When a plaintiff fails to respond to the defendant's motion for summary judgment, the inquiry must be whether the facts presented by the defendant create an appropriate basis to enter summary judgment against the plaintiff. *Id.*

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.   Analysis

### A.   Officers Orta and Sherron

Officers Orta and Sherron argue that Plaintiff's claim is precluded by the doctrine of qualified immunity. ECF No. 121. Qualified immunity protects public officials from suit and liability for damages under § 1983 unless their conduct violates a clearly established constitutional right. *Mace v. City of Palestine,* 333 F.3d 621, 623 (5th Cir. 2003). In addressing whether qualified immunity applies, courts engage in a two-step inquiry, determining (1) whether a federal statutory or constitutional right was violated on the facts alleged; and (2) whether the defendant's actions violated clearly established rights of which a reasonable person would have known. *Id.* at 623–24. The two steps of the qualified-immunity inquiry may be performed in any order. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Under the second step of the inquiry, "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (citations, quotation marks and alteration marks omitted). The Court does not need "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Clearly established law is not determined "at a high level of generality." *Id.* at 742. Instead, "[t]he dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix v. Luna,* 511 U.S. 7, 12 (2015) (citation and emphasis omitted). The inquiry must look at the specific context of the case. *Id.*

Plaintiff alleges pretrial detention in violation of the Fourth Amendment. As the Fifth Circuit noted in this case, "[t]he Fourth Amendment protects against pretrial detention instituted pursuant to wrongful legal process." *Garcia v. San Antonio, Tex.,* 784 F. App'x 229, 232 (5th Cir. 2019). This includes the "constitutional right . . . to be free from police arrest without a good faith showing of probable cause" based on "deliberated or reckless false statements." *Winfrey v. Rogers,* 901 F.3d 483, 494 (5th Cir. 2018). Such a right is "clearly established" for purposes of qualified immunity. *Id.*

Plaintiff asserts that the probable cause showing which supported the search warrant for his blood, and, ultimately, his pretrial detention, was predicated on the officers' false statements. ECF No. 129 at 8 (citing *Manuel v. City of Joliet, nz.,* 137 S. Ct. 911, 918 (2017)). In order to with withstand summary judgment on such a claim, Plaintiff must demonstrate a fact issue about the following elements: (1) the affiant, in support of the warrant, includes "a false statement knowingly and intentionally, or with reckless disregard for the truth," and (2) "the allegedly false

8

statement is necessary to the finding of probable cause." *Manuel,* 137 S. Ct. at 918. The offense for which Plaintiff was detained was Driving While Intoxicated pursuant to Texas Penal Code § 49.04. ECF No. 129 at 9. The Penal Code defines the offense as follows: "[a] person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE § 49.04(a). Plaintiff alleges that Defendants made false statements relating to two elements of the offense: (1) whether he was "operating a motor vehicle" and (2) whether he was "in a public place." ECF No. 129 at 9–13. The Court will address each in turn.

       *1.*  *Whether Plaintiff was operating a motor vehicle.*

"Operating" a motor vehicle is defined broadly in the DWI context. *Dornbusch v. State*, 262 S.W.3d 432,436 (Tex. App.—Fort Worth 2008, no pet.). While there is no statutory definition of the term "operate," the Texas Court of Criminal Appeals has determined that a person "operates" a vehicle when the totality of the circumstances demonstrate the person took action to affect the functioning of the vehicle in a manner that would enable its use. *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995) (citing *Barton v. State*, 882 S.W.2d 456, 460 (Tex. App.—Dallas 1994, no writ)). In *Denton*, the Court of Criminal Appeals held that "while driving does involve operation, operation does not necessarily involve driving." *Id.* at 389; see, e.g., *Partee v. Texas Dep't of Pub. Safety*, 249 S.W.3d 495, 499 (Tex. App.— Amarillo 2007, no pet.) (the defendant's "application of the brake pedal, thereby restraining the vehicle's actual movement, falls within the definition of 'operating a motor vehicle.'").

Plaintiff identifies as false Officer Sherron's statement that Plaintiff "attempted to pull the vehicle forward" and then the "vehicle lunge[d] forward and then abruptly [came] to a stop a few feet later." ECF No. 129 at 11–13. The parties have submitted video evidence depicting the incident, as well as photographs, expert evidence, and testimony from Plaintiff, Sherron, and

9

Orta. ECF Nos. 121-2, 121-5, 129-2. The evidence does raise a genuine factual dispute about whether and by what means the vehicle traveled. Sherron himself concedes that it is possible the vehicle might have moved as little as six inches, despite his perception that it was "a few feet." ECF No. 129-5 at 19.

Plaintiff also contends that he has created a fact issue regarding whether Sherron made a false statement regarding the car keys. Sherron stated that Plaintiff's vehicle was running during the initial interaction, and an officer had to reach into Plaintiff's vehicle to remove the keys from the ignition and turn the vehicle off. ECF No. 121-1 at 4–5. Plaintiff disputes this, pointing to his deposition testimony that the car keys were in his pocket, rather than in the ignition, as reported by Sherron. ECF No. 129-7 at 8.

The Court concludes that there is a genuine dispute as to whether Plaintiff was "operating a motor vehicle" within the meaning of TEX. PENAL CODE § 49.04(a).

2.     *Whether Plaintiff was in a public place.*

As to whether Plaintiff's vehicle was in a public place, the officers attested that Plaintiff's vehicle was found at "2000 block of Zarzamora St." in a public place, which Plaintiff claims was "at least fundamentally misleading." ECF No. 129 at 9. A review of the video evidence submitted reveals that there is no factual dispute as to the location of the vehicle, which was publicly accessible in a driveway area off Zarzamora Street. ECF Nos. 121-2, 121-5, 129-2. Accordingly, the issue before the Court is a legal one: was the driveway fairly, or falsely, characterized as "a public place."

Under Texas law, a public place is "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops."

TEX. PENAL CODE § 1.07(a)(40). Plaintiff contends that, as he was parked in the driveway of a construction site, not on the street itself, he therefore was not in a public place. ECF No. 129 at 9–10. The Court agrees with the Magistrate Judge's conclusion to the contrary. While there have been some cases in which the secluded driveways of private residences have been found not to constitute public places, *see, e.g.*, *Fowler v. State*, 65 S.W.3d 116, 119 (Tex. App.—Amarillo 2001, no pet.), those facts are not analogous to the situation here, where Plaintiff was mere feet from a public road and sidewalk, on the driveway of a seemingly public construction site. The Court concludes that there is no genuine dispute as to whether Plaintiff was "in a public place" within the meaning of TEX. PENAL CODE § 49.04(a).

Plaintiff's argument that the driveway does not legally qualify as a "public place," even if true, would not, under these facts, establish that the Officers made a "false statement knowingly and intentionally, or with reckless disregard for the truth." *Manuel,* 137 S. Ct. at 918; *see Gerstenkorn v. State,* 239 S.W.3d 357, 358-59 (Texas. App. 2007) (holding that even gated communities and restricted air force bases constitute public places as long as public can access them).

                3.      *Materiality of the false assertions to probable cause determination.*

By themselves, the factual disputes concerning whether Plaintiff was operating the vehicle do not require denial of summary judgment on Plaintiff's Fourth Amendment claim. To raise a genuine issue of material fact, Plaintiff need not merely show that statements were arguably false; he must also show that a reasonable jury could conclude that "the allegedly false statement [was] necessary to the finding of probable cause." *Manuel*, 137 S. Ct. at 918; *see also Franks v. Delaware*, 438 U.S. 154, 156 (1978) (same). To determine whether any false statement was necessary for this finding, the Court must consider the faulty affidavit as if those errors and

omissions were removed, and then examine whether a hypothetical "corrected affidavit" would still give rise to a finding of probable cause. *See Franks*, 438 U.S. at 156. As the Supreme Court has explained, probable cause is a "practical and common-sensical standard" which uses the "totality of the circumstances" to determine whether a person of reasonable caution would believe that the individual had committed the crime for which he is being arrested. *Florida v. Harris*, 568 U.S. 237, 243-44 (2013).

An affidavit containing only undisputed information would include the following facts: Plaintiff was alone in the vehicle with the keys at 11:14 pm, asleep in the driver's seat, pulled over from the road, and showing what officers believed to be signs of intoxication. ECF No. 121-1 at 4–5, 8. The Magistrate Judge concluded that "[t]aken as a whole, this evidence demonstrates probable cause to believe that Plaintiff was operating a motor vehicle while intoxicated." ECF No. 134 at 8. The Court disagrees.

The Magistrate Judge correctly noted that Texas case law makes clear that a § 49.04 offense may be established even where the vehicle was not moving, and that the keys were not in the ignition. *Id.* at (citing *Hearne v. State,* 80 S.W.3d 677, 679 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (defendant asleep behind wheel of idling vehicle in "park" in roadway); *Barton v. State,* 882 S.W.2d 456,457 (Tex. App.—Dallas 1994, no pet.) (same, vehicle in "neutral"); *Vaughn v. State,* No.05-05-01313-CR, 2006 WL 1985968, at *2 (Tex. App.—Dallas, July 18, 2006, pet. ref'd) (keys being in ignition is not required for conviction of driving while intoxicated)). But the cases cited in support of those positions are distinguishable on the facts. Specifically, the evidence in those cases indicated that the vehicles had been driven very recently, suggesting that they had been driven by the person sleeping behind the wheel. In *Hearne,* for example, the defendant's truck was found in a moving lane of traffic, with the

engine running. 80 S.W.3d at 679. Likewise, in *Barton*, the vehicle was located at an intersection. Moreover, not realizing that the ignition had been turned off by an officer on the scene, the accused in that case awoke, engaged the clutch, put the gear shift into first and let out the clutch in an attempt to drive away—further evidence that he had recently been driving the vehicle. 882 S.W.2d 458. The evidence in *Vaughn* included a witness—the officer was responding to a call from a citizen was following a red Suburban that had sparks flying from it and whose driver was possibly intoxicated. 2006 WL 1985968, at *1.

The mere fact that Plaintiff was found in the driver's seat of a car parked in a driveway, whether public or private, is insufficient evidence that he had been operating the vehicle. The Officers had no information about how long Plaintiff and the car had been parked outside of the construction site.[2] Likewise, the Officers were not responding to a call from a citizen who witnessed the vehicle in motion; the caller reported a man sleeping behind the wheel of a car. *See Kirsch v. State*, 366 S.W.3d 864, 870 (Tex. App. 2012) ("whether Kirsch was operating the motor vehicle was the central issue in this case, considering that no witness saw Kirsch driving the motorcycle."). Because they would be devoid of any circumstantial evidence to support the inference that Garcia had recently been operating the vehicle, the hypothetical, "corrected" Officers' reports would not give rise to a finding of probable cause. *See Franks*, 438 U.S. at 156.

---

[2]  *See, e.g.*, *Duran v. State*, 352 S.W.2d 739, 741 (Tex. Crim. App. 1962) (reversing intoxicated driver's DWI conviction because "it was not established when he drove it") (emphasis in original); *Ballard v. State*, 757 S.W.2d 389, 391 (Tex. App.—Houston [1st] 1988, pet. ref'd) (reversing DWI conviction of person found asleep at the wheel on the shoulder because there was "no testimony concerning how long the car had been parked on the shoulder"); *Reddie v. State*, 736 S.W.2d 923, 927 (Tex. App.—San Antonio 1987, pet. ref'd) (reversing DWI conviction of person found asleep at the wheel in the middle of the road because there was "no evidence as to when appellant became intoxicated or that he was intoxicated at the time he performed an act to affect the functioning of the vehicle"); *Coleman v. State*, 704 S.W.2d 511, 512 (Tex. App.—Houston [1st] 1986, pet. ref'd) (reversing DWI conviction due to lack of evidence that driver at accident scene "was intoxicated at the time he was driving") (emphasis in original); *Sinast v. State*, 688 S.W.2d 631, 632 (Tex. App.—Corpus Christi-Edinburg 1985, pet. ref'd) (reversing DWI conviction because "[a]bsent any evidence in the record fixing the time of the accident, the evidence is insufficient to show that appellant drove at the time he was intoxicated").

Accordingly, a reasonable jury could conclude that "the allegedly false statement[s]"—that Plaintiff "attempted to pull the vehicle forward" and that the "vehicle lunge[d] forward and then abruptly [came] to a stop a few feet later"—were "necessary to the finding of probable cause." *Manuel*, 137 S. Ct. at 918; *Franks*, 438 U.S. at 156. Plaintiff has demonstrated a genuine issue of material fact as to whether he was detained pursuant to wrongful legal process in violation of his rights under the Fourth Amendment.

### B. City of San Antonio

The U.S. Supreme Court made clear long ago that a local governmental entity can only be held liable under Section 1983 for constitutional harms that are directly attributable to the governmental entity itself. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). Accordingly, a plaintiff suing a municipality under Section 1983 must show that "the municipality has a policy or custom that caused plaintiff's injury." *Crull*, 267 F. App'x at 342 (citing *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). "The plaintiff must identify the specific policy or custom, and show that the final policy maker, through its 'deliberate conduct,' was the 'moving force' behind the violation." *Crull*, 267 F. App'x at 342 (citing *Brown*, 520 U.S. at 405).

Here, Plaintiff alleges that two policies of the City of San Antonio—the SAPD's DWI form and its participation in a traffic enforcement incentive program—were the moving force behind the violation of his constitutional rights. First, Plaintiff challenges the SAPD's use of a "pre-filled form" for DWI arrests that "suggests that the arrest occurred on a street—even if it did not—as officers were trained to fill in 'X block of Y St" for the location—even if that location was a driveway or parking lot." ECF No. 129 at 18 (citing ECF No. 129-6, Orta Dep. Tr.

at 101:22–104:10; ECF No. 129-5, Sherron Dep. Tr. at 57:25–58:4). The Court need not reach the question of whether the "conclusory" reference to "public place" renders the form constitutionally infirm, however, because the Court has already determined that the Officers' statement that Plaintiff was in a public place did not constitute either deliberate misstatements or a reckless disregard for the truth. Whether the form has generally encouraged officers to "obscure[e] the facts relating to 'public place,'" is irrelevant here, where the evidence demonstrates that Plaintiff was in fact in a public place. ECF No. 129 at 18. In other words, the DWI form cannot have been the "moving force" behind the constitutional violation here, which involves the Officer's misstatements concerning whether Plaintiff was operating the vehicle rather than the location of the alleged offense.

Plaintiff's second challenge to the City's policies alleges that the SAPD's incentive pay structures and federal funding encouraged false DWI arrests by requiring officers to make a minimum number of citations, warnings, or arrests per hour to be eligible for incentive pay under the Selective Traffic Enforcement Program ("STEP"). ECF No. 86 at 6. The STEP program is a grant-funded program wherein officers can earn extra pay working in traffic enforcement and DWI. Though Orta was called to the scene to determine whether Plaintiff was intoxicated, he was not working STEP at the time he arrested Plaintiff on July 17, 2014; he was working his regular patrol shift. *See* ECF No. 120-8 at 22–25; ECF No. 120-14 at 43. Accordingly, STEP cannot have been the "moving force" behind the constitutional violations in the case at bar.

Because Plaintiff has failed to create a genuine issue of material fact as to whether the City's policies were the "moving force" behind the violations of his constitutional rights, his claim does not satisfy the standard set forth in *Monell* and thus fails as a matter of law. *Crull*, 267 F. App'x at 342.

### C. Chief McManus

The well settled jurisprudence under 42 U.S.C. § 1983 establishes that supervisory officials cannot be held vicariously liable for the actions of their subordinates. *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Personal involvement is an essential element of a civil rights cause of action. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Supervisory officials may be held liable if they: 1) affirmatively participate in the acts that cause the constitutional deprivation; or 2) implement unconstitutional policies that causally result in the plaintiff's injury. *Mouille*, 977 F.2d at 929.

Plaintiff has failed to allege any personal involvement by Chief McManus in his arrest. As such, he cannot meet the personal involvement requirement. Additionally, Plaintiff's claims against Chief McManus as the alleged policymaker for the SAPD fail for the same reasons that his claims against the City cannot survive summary judgment. In short, Plaintiff has failed to produce any evidence that Chief McManus implemented an unconstitutional policy and that the policy caused Plaintiff's injuries. Therefore, any claims asserted against Chief McManus in his individual capacity fails as a matter of law.

### CONCLUSION

For the reasons herein, the Court accepts the Magistrate Judge's recommendation to grant summary judgment with respect to Plaintiff's claims against the City and Chief McManus, but not with respect to his claims against Officers Orta and Sherron, which remain to be tried. Accordingly, the City's motion for summary judgment (ECF No. 120) is **GRANTED**, and the Individual Defendants' motion for summary judgment (ECF No. 121) is **GRANTED IN PART AND DENIED IN PART**.

It is so **ORDERED**.

SIGNED this August 23, 2021.

                                           XAVIER RODRIGUEZ
                                           UNITED STATES DISTRICT JUDGE